WILLIAM R. PEDRICK & another *vs.* HEATON BAILEY &
• another.

An ordinance of a city, providing that no person shall maintain an awning before his door
without the consent of the mayor and aldermen, is reasonable; and an awning erected
without such consent is an unlawful obstruction.

The mayor of a city, whose charter provides that he "shall be the chief executive officer
of the city," that "it shall be his duty to be vigilant in causing the laws and regula-
tions of the city to be enforced," and that "the executive power of said city generally
and the administration of the police shall be vested in and may be exercised by the mayor
and aldermen as fully as if the same were herein specially enumerated," may lawfully
remove an awning, erected in violation of an ordinance of the city, after a vote of the
board of aldermen authorizing and instructing him "to proceed forthwith to remove all
wood awnings now standing in said city in violation of law," although a street commis-
sioner has been appointed, with the powers and duties of a surveyor of highways.

ACTION OF TORT for taking down and removing an awning
which projected from a building of the plaintiffs over a sidewalk
in Lawrence. The defendants, one of whom was mayor of
Lawrence, justified upon the ground that the awning was of
wood, and was maintained in violation of an ordinance of the
city of Lawrence, passed on the 22d of April 1856; * and that
the mayor ordered it to be taken down by virtue of his general
duty and authority as mayor, and of a special vote passed by

---

* ORDINANCE NO. 20, PROVIDING FOR THE ERECTION OF AWNINGS.

SECT. 1. Any person may, with the consent of the mayor and aldermen, and
not otherwise, place or continue to maintain awnings and shades before any house,
shop or store, in any street in the city; *provided*, that the mayor and aldermen,
as to particular buildings and streets, may order that no awnings or shades shall
be erected.

SECT. 2. All such awnings or shades shall be constructed of cloth or canvas,
attached to iron frames, securely fastened and supported from above, and shall
be not less than eight feet above the level of the sidewalks over which they are
placed; and the person so placing or continuing to maintain the same shall at
all times and in all respects conform to any directions in relation to the construc-
tion and maintenance thereof which shall be given by the mayor and aldermen.

SECT. 3. Any person violating any of the provisions of this ordinance, or any
such direction of the mayor and aldermen, shall be liable to a fine not exceeding
twenty dollars, and to a like penalty for every day that such awnings or shades
shall be continued in violation of law.

the board of aldermen on the 9th of December 1856,* and that the other defendant acted under his authority and direction.

At the trial in the court of common pleas, *Perkins*, J. ruled " that, assuming the sidewalk over which the awning projected to be a part of a public street, and the awning to have been there in violation of said ordinance, the mayor, by virtue of his office merely, had no greater or other right to remove it, or to authorize or employ others to remove it, than any private citizen, and that no such authority was given to him by said vote of the board of aldermen ; and that the defendants could not justify on any other ground than that on which any private citizen might justify in removing the awning as a public nuisance." The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions. It was agreed that any pertinent ordinance of the city of Lawrence might be referred to.

*R. H. Dana, Jr.*, for the defendants.

*O. P. Lord*, for the plaintiffs.

BIGELOW, J. There can be no doubt that tne awning for the removal of which damages are claimed in this action, was an unlawful erection and obstruction in a street of the city of Lawrence. It was not placed or maintained there with the consent of the mayor and aldermen. Its continuance without such consent was within the express prohibition of the city ordinance, which provides that persons may continue to maintain awnings and shades before any house or shop " with the consent of the mayor and aldermen, and not otherwise." It is equally clear, we think, that this ordinance was a lawful, proper and reasonable by-law, which the city council were fully authorized to establish under the charter of the city, *St.* 1853, *c.* 70, § 21, by which they were empowered to pass all such salutary and needful by-laws as towns by law have authority to establish, and which were to take effect and have full force without the sanction of any court. Among the leading and obvious duties of

---

* City of Lawrence. In Board of Aldermen, December 9th 1856 Ordered that the mayor is hereby authorized and instructed to proceed forthwith to remove all wood awnings now standing in said city in violation of law.

a municipal government is that of securing a tree and uninterrupted passage through streets situated in a populous neighborhood; and a by-law intended to accomplish this purpose, by restraining and regulating erections over a portion of the travelled way, is clearly within the legitimate scope of the power confided to towns and cities. *Goddard, petitioner,* 16 Pick. 511. Especially is it within their province to regulate the construction of awnings, inasmuch as they are liable for damages occasioned to passers by through any defect or insufficiency in the construction. *Drake* v. *Lowell,* 13 Met. 292.

The only other question in the case is whether the removal of this unlawful obstruction by the mayor of the city was without legal authority. It seems to be very clear that it was not. It appears that he acted not only by virtue of the authority vested in himself as mayor of the city, but also under a vote of the mayor and aldermen, by which he was directed "to proceed forthwith to remove all wood awnings now standing in said city in violation of law." On reference to the provisions of the city charter already cited, § 7, it will be found that the mayor is constituted the chief executive officer of the city, and he is expressly required to be vigilant in causing the laws and regulations of the city to be enforced; and by § 8 it is further provided, that "the executive power of said city generally and the administration of the police shall be vested in and may be exercised by the mayor and aldermen as fully as if the same were herein specially enumerated." Under this very broad and general grant and delegation of power to the mayor, he was armed with sufficient legal authority to enforce a by-law of the city, and to remove obstructions in the streets, which were erected in violation of the city ordinances. Indeed, it is difficult to see how the power could have been granted in fuller and more comprehensive terms.

Nor can it be contended that the ordinance of the city, by prescribing a penalty for an unlawful erection or continuance of an awning, restricted or in any degree abridged this power. By inflicting a fine on the offender, the framers of the ordinance did not intend to license or give permission for the continuance

of the unlawful erection. The provision for the penalty was cumulative, not exclusive. The imposition of a fine did not render the structure lawful. It would still continue to be an illegal obstruction in the street, and liable to removal as such under the superintending power vested in the mayor.

The same answer is to be given to the suggestion that the whole power to remove obstructions in the streets was vested in the commissioner of streets elected under the provisions of the ordinance of the city, No. 5.* The design of this ordinance was not to abridge or take away any power vested by law in the mayor ·or the mayor and aldermen. It was intended only as a delegation of a portion of their legal authority, so that it might be exercised on occasions when they could not be personally present and acting. The commissioner was only a subor-

---

* ORDINANCE NO. 5, ESTABLISHING THE OFFICE OF COMMISSIONER OF STREETS, AND DEFINING THE DUTIES THEREOF.

SECT. 1. There shall annually be appointed by the city council in convention, by ballot, an able and discreet person, to be styled the commissioner of streets, who shall also be the surveyor of highways, required by law to be chosen, and who shall continue in office until removal, or until a successor be appointed and sworn to the faithful performance of his duty. He shall receive such compensation for his services as the city council shall establish, and shall be removable at their pleasure; and in case said office shall become vacant by death, resignation or otherwise, a successor shall be appointed in the manner prescribed.

SECT. 2. It shall be the duty of the commissioner of streets, under the general care and supervision of the mayor and aldermen, to superintend the general state of the streets, roads, sidewalks, lanes, bridges, public walks and squares of the city, except the common; to attend to the making, widening or alteration of the same; to cause the same to be kept in good, sufficient and suitable repair, and to make all contracts for labor and materials that may be necessary; to superintend the building and repair of any drains or sewers for the city, and to make all necessary contracts for the same; such contracts to be in all cases subject to the approval of the mayor and aldermen. He shall also make all necessary arrangements for keeping the streets clean and in good order, and he shall give notice to the mayor or city marshal in case of any nuisance, obstruction or encroachment in or upon any of the streets, roads, sidewalks, bridges, public walks or squares of the city.

SECT. 3. The commissioner of streets may make such arrangements with the overseers of the poor, for the purpose of procuring labor and materials in the discharge of his duty aforesaid, as the interests of the city may require.

dinate officer, who, by the terms of the ordinance, was to exercise the duties devolved on him under the care and supervision of the mayor and aldermen. *Exceptions sustained.*